**Otis J. TATE, Plaintiff,**

v.

**Norman L. CARLSON, Michael J. Quinlan, Defendants.**

**No. 84 Civ. 1852–CSH.**

United States District Court,
S.D. New York.

May 14, 1984.

On Eighth Amendment Claim
April 26, 1985.

Otis J. Tate, pro se.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y. by Bernard Bell, Asst. U.S. Atty., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

On January 14, 1976 plaintiff Otis J. Tate was sentenced in the Eastern District of Pennsylvania to an 18-year sentence for theft of government property and assault on a federal officer. He was ultimately confined at the Federal Correctional Institution at Otisville, N.Y.

On April 9, 1983 Tate was involved in a fight with another inmate, who died of stab wounds. The prison authorities placed Tate in administrative detention pursuant to 28 C.F.R. § 541.22. "Administrative detention" is defined by that section of the regulations as "the status of confinement of an inmate in a special housing unit in a cell either by himself or with other inmates which serves to remove the inmate from the general population." Section 541.22(a) provides that the warden of the facility:

"... may ... place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:

"(1) Is pending a hearing for a violation of Bureau [of Prisons] regulations; ..."

On April 25, 1983 disciplinary actions were taken against Tate as the result of the inmate killing. The disciplinary sanctions imposed included sixty days in disciplinary segregation. "Disciplinary segregation" is defined by 28 C.F.R. § 541.21 as:

"... the status of confinement of an inmate housed in a special housing unit in a cell either alone or with other inmates, separated from the general popu-

lation. Inmates housed in disciplinary segregation have significantly fewer privileges than those housed in administrative detention."

Upon completion of Tate's placement in disciplinary segregation, he was again placed in administrative detention.

With respect to the permissible duration of confinement in administrative detention, § 541.22(a)(6)(i) provides:

"In Security Level 1 through 5 and Administrative type (exception pretrial inmates) institutions, staff within 90 days of an inmate's placement in post-disciplinary detention shall either return the inmate to the general inmate population or effect a transfer to a more suitable institution."

Tate re-entered administrative detention, after his release from disciplinary segregation, on June 25, 1983. He is still there.

On May 19, 1983, Tate was indicted in the New York Supreme Court of Orange County for second degree murder in the murder of his fellow inmate, one Emanuel Stewart. The state court requested that Tate be kept at the Otisville facility, within the jurisdiction of the state court, until Tate's trial on the murder indictment and the completion of sentencing.

Tate pleaded guilty to the state charge on March 6, 1984. He was scheduled to be sentenced on April 13, 1984, but that sentencing was postponed. If it has been rescheduled, the record does not reflect the adjourned date.

On April 11, 1984, plaintiff was placed in disciplinary segregation for fifteen days for possessing a disguise. Plaintiff says that there was no merit to this particular charge.

Complaining of his prolonged confinement in administrative detention, and of other conditions of that confinement, plaintiff prays for declaratory and injunctive relief, and compensatory and punitive damages. The Court construed Tate's complaint and supporting papers as, in the first instance, a motion for preliminary injunction in respect of the conditions of his confinement. Defendants, the Director of the Federal Bureau of Prisons and the Warden of Otisville, have responded accordingly.

### I.

Plaintiff's first claim is that the detention deprives him of his Sixth Amendment right to an effective defense of the state murder charge because it restricts his access to the prison law library. Since he has already pleaded guilty, that constitutional claim is mooted. In any event, since he was represented by counsel not alleged to be incompetent, there was no Sixth Amendment deprivation. The Constitution does not guarantee prisoners access to a law library so long as other means of competent defense are available. *Cf. Bounds v. Smith*, 430 U.S. 817, 829–31, 97 S.Ct. 1491, 1498–98, 52 L.Ed.2d 72 (1977). It is worth noting that plaintiff does not allege that he was placed in detention without the process due him under *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

### II.

It is a closer question whether administrative detention for thirteen months constitutes cruel and unusual punishment, plaintiff's second claim. Although segregated administrative detention is not *per se* unconstitutional, *Kelly v. Brewer*, 525 F.2d 394, 399 (8th Cir.1975), and plaintiff has alleged no hardships relating to his food, clothing, sanitation, or safety, *Lareau v. Manson*, 651 F.2d 96 (2d Cir.1981), the Supreme Court has indicated that conditions tolerable over a short term may become "intolerably cruel" over the long term. *Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978). Indeed, in that case the Supreme Court affirmed a finding that conditions in Arkansas prison punitive isolation cells violated the Eighth Amendment.

### III.

However, in assessing plaintiff's right to injunctive relief, I need not reach

the constitutional question, for I find plaintiff's further open-ended administrative detention to be in violation of federal regulations. Section 541.22(a)(6)(i) unambiguously requires return or transfer within 90 days of prisoners not awaiting federal trial. The plain language of the regulation seems to require that he be released from detention.[1]

The Government argues, however, that the regulation should not be so strictly construed. It points to Bureau of Prisons Program Statement 5270.5, Chapter 9, at 6, which notes that "[o]n occasion, court requirements or similar constraints require an inmate's retention beyond 90 days (for example, the inmate cannot be transferred due to pending charges)."

I am bound to give deference to reasonable administrative agency interpretations of their own regulations, and I accept this as a reasonable interpretation of § 541.22. *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). Plainly the State has a substantial interest in keeping a prisoner within the geographical bounds of its jurisdiction. The Bureau is not unreasonable in interpreting the otherwise absolute language of § 541.22 so as to permit the federal prisons to serve this interest when "a more suitable institution" is not available within the jurisdiction. The alternatives are to force on the state the burden of extradition should the prisoner be transferred to another prison, or to subject the prisoner to the dangers presumably present in placing him back into the general prison population after 90 days. Faced with these alternatives, the Bureau of Prisons may permissibly interpret § 541.22 to permit it to retain prisoners in the safety of administrative detention for a reasonable time beyond 90 days when a suitable prison is not present within the jurisdiction of the state court.

That said, however, neither § 541.22 nor Statement 5270.5 gives the prison and the State carte blanche to keep a prisoner in administrative detention for as long as they please. The strict limit set out in § 541.22 emphasizes that administrative detention is to be used for limited periods only. If the pendency of state criminal charges demands that this brief period be exceeded, it behooves the state to move swiftly in indicting, trying, and sentencing the prisoner. Over fourteen months have passed since the murder. Following service of his prisoner-imposed period of disciplinary segregation, plaintiff has been in administrative detention the whole time. He pled guilty over two months ago, yet the State has taken no steps to sentence him. Indeed, a letter submitted by plaintiff demonstrates that he was scheduled for sentencing on April 5, 1984. Since that time his sentencing has been postponed numerous times in order to, *inter alia,* accommodate the sentencing judge's vacation. Now sentencing is assertedly postponed indefinitely. Plaintiff may not, under the regulations, be administratively confined to suit the pleasure and leisure of the State.

Plaintiff Tate is entitled to the intervention of equity which will place a limit on his administrative detention, already unreasonably extended.[2]

---

1. *Cf.* 28 C.F.R. § 541.22(a)(6)(iii), (iv), which provides that in "Security Level 6 institutions" the warden may approve an extension of the 90 day period, subject to review by superior officers of the Bureau of Prisons. If discretionary extensions are made permissible only in Security Level 6 institutions, by inference they are impermissible in others. *Expressio unius est exclusio alterius.* Defendants do not suggest that Otisville is Level 6. Section 541.22(a)(6)(i) uses the mandatory word "shall." Section 500.1(e) provides: " 'Shall' means an obligation is imposed."

2. I have considered and reject defendants' footnote argument (brief at 11) that by virtue of

Tate's 15-day placement in disciplinary segregation in April, 1984, another 90 days of post-disciplinary administrative detention are automatically available to the warden under § 541.22(a)(6)(i). Section 541.22(c) makes it entirely clear that administrative detention is to be as short as possible. Thus that sub-section provides in part: "Administrative detention is to be used only for short periods of time except where an inmate needs long-term protection (see § 541.23), or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns." The Otisville authorities do not need any further time to study Tate, or to make up their minds what to do with

Whether or not Tate has been sentenced by the state court, he must within twenty (20) days of the date of this order be released to the general Otisville population, or transferred to a more suitable institution within the federal system. If the State sentence has not been imposed by that time, Tate will have to be extradicted for sentencing.

I do not reach the damages claims.

It is SO ORDERED.

## ON EIGHTH AMENDMENT CLAIM

Plaintiff Otis Tate was, at the time of filing of this lawsuit, a federal prisoner at the Federal Correctional Institution at Otisville, New York. Through a combination of circumstances described in the Court's Memorandum Opinion and Order of May 14, 1984, he was held in administrative detention—a condition of semi-solitary confinement and restricted privileges—for over a year. This extended detention served as the basis for his complaint, which alleged Sixth and Eighth Amendment deprivations and prayed for injunctive and monetary relief. I construed the complaint as a motion for a preliminary injunction and directed the Government to respond.

In the above-mentioned opinion of May 14, I dismissed plaintiff's claims under the Sixth Amendment, but I did not reach the constitutional Eighth Amendment claim. Instead, I held that petitioner's extended detention violated existing prison regulations, and directed that plaintiff be promptly released from detention or moved to another institution. Apparently the order was complied with, for plaintiff is currently incarcerated in Lewisburg, Pennsylvania.

The Government now moves for summary judgment on the claims for damages. Plaintiff, appearing *pro se*, has filed no papers in opposition.

■ It is clear that plaintiff may maintain an action for damages against federal officials who have violated his constitutional rights in the course of performing their duties. *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] In his complaint, plaintiff states three cognizable constitutional claims: 1) that by restricting his access to the prison law library, defendants violated his Sixth Amendment rights, 2) that by keeping him in semi-solitary confinement for over a year defendants violated his Eighth Amendment rights, and 3) that by keeping him in administrative detention in excess of the time permitted by prison regulations defendants violated his due process rights. I address these in turn.

In the May 14 order, I held plaintiff's Sixth Amendment claim meritless on the basis of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). That ruling was in effect a dismissal for failure to state a claim, and I adhere to it.

■ As noted, I did not rule on plaintiff's Eighth Amendment claim in the May 14 order. However, a number of courts have held that extended confinement under conditions similar to those imposed upon plaintiff[2] does not constitute cruel and unusual punishment. *See Sostre v. McGinnis*, 442 F.2d 178, 190–94 (2d Cir.1971) (en banc) (twelve months); *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir.1984) (indefinite); *Jackson v. Meachum*, 699 F.2d 578, 582–84

him. The choice of returning Tate to the Otisville general population or transferring him elsewhere is entirely up to prison authorities. But they do not need another 90 days to think it over.

**1.** In its thorough brief, the Government argues that if plaintiff's claims are construed as tort claims against the United States, they are barred by sovereign immunity and by plaintiff's failure to exhaust his administrative remedies. Because it seems clear to me from reading the complaint that plaintiff is asserting standard

*Bivens*-type claims, I do not so construe the complaint. However, to the extent plaintiff wished to assert a claim for damages premised solely upon the violation of the regulation, these doctrines would bar his recovery.

**2.** For a description of those conditions, see the Quinlan affidavit of January 31, 1985, attached to defendants' notice of motion. Plaintiff has not disputed Quinlan's account of the conditions in administrative detention at Otisville.

(1st Cir.1983) (citing cases). Second Circuit authority is binding upon me. Plaintiff's detention did not constitute cruel and unusual punishment. Nor does the violation of a regulation in these circumstances implicate due process guarantees. *United States v. Caceres*, 440 U.S. 741, 752, 99 S.Ct. 1465, 1471, 59 L.Ed.2d 733 (1979).[3]

As a result, plaintiff has no claim for damages. Because he has been transferred out of administrative detention, any request for permanent injunctive relief is mooted. Defendants are entitled to summary judgment dismissing the complaint.

It is SO ORDERED.

---

**3.** Because I find no constitutional violations, I do not reach the question of good faith immunity under such cases as *Procunier v. Navarette,* 434 U.S. 555, 561–63, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978).